```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF IOWA
                       CENTRAL DIVISION
```

| | |
|---|---|
| **SHIRLEY EDWARDS,** | |
| Plaintiff, | **No. 11-CV-3028-DEO** |
| v. | ORDER |
| **VAN DIEST SUPPLY COMPANY, INC.,** | |
| Defendant. | |

## I. INTRODUCTION

Currently before this Court is Defendant's Motion for Summary Judgment (Docket No. 14). The parties appeared via telephone for hearing on Tuesday, November 6, 2012. After hearing the parties' arguments, the Court took the issues under advisement and now enters the following:

## II. FACTUAL HISTORY

The Plaintiff, Shirley Edwards [hereinafter Ms. Edwards] began working for Van Diest Supply Company in Webster City, Iowa, on October 5, 2004. She was a production plant operator at Van Diest from October 12, 2004, to October 21, 2007. On October 21, 2007, at the age of 56, Ms. Edwards was promoted to the position of production team leader and remained in that

position until her termination on December 23, 2009, at the age of 58.

The principle issue in this case is Ms. Edwards' termination. The Defendant contends that Ms. Edwards was terminated because she used foul and abusive language towards her subordinates. Ms. Edwards contends that she was terminated because of her age and her use of Family Medical Leave Act [hereinafter FMLA] leave.

The Defendant argues that on December 18, 2009, Ms. Edwards got into a confrontation with other Van Diest employees including Patrick Dencklau, Marcus Wilson and Jack Anderson. Those employees alleged that Ms. Edwards used extremely foul language to reprimand them after Anderson made a mess in a recently cleaned work area. After the incident, Ms. Edwards was confronted by Van Diest's management. She admitted that she should not have reacted as strongly as she did, although she denied using the exact profane language the other employees alleged. The Defendant alleges that Bob Van Diest, President of Van Diest Supply Company, reviewed the incident and made the decision to terminate Ms. Edwards based

upon language in Van Diest's Personnel Policies and Procedures Manual.

Ms. Edwards contends that she was dismissed because of her advanced age and in retaliation for using FMLA leave. Ms. Edwards took FMLA leave from October 28, 2009, until November 20, 2009, as a result of illness. Ms. Edwards alleges that Van Diest inappropriately attempted to penalize her for taking FMLA leave including attempting to, or at least discussing, taking away her "white hat" (supervisor's) status because of FMLA leave.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007)).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

**IV. ISSUES**

Defendant's Motion for Summary Judgment raises two issues.  The Defendant first argues that Ms. Edwards cannot satisfy her burden of proof on the FMLA retaliation claim. The Defendant next argues that Ms. Edwards has failed to show that age discrimination was the 'but for' reason for her termination.

**V. ANALYSIS**

**A. FMLA Claim**

The FMLA entitles eligible employees to take a total of twelve weeks of leave during a twelve-month period due to a serious health condition that makes the employee unable to perform the functions of their job.  Thorneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005).  The act prohibits employers from discharging or otherwise discriminating against any individual for asserting his or her rights under the FMLA.  29 U.S.C. § 2615(a)(2) and Hite v.

Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir 2006). There are two types of claims under the FMLA: (1) "interference" or "(a)(1)" claims in which the employee alleges that the employer denied or interfered with her substantive rights under the FMLA; and (2) "retaliation" or "(a)(2)" claims in which the employee alleges that the employer discriminated against her for exercising her FMLA rights. Scobey v. Nucor Steel-Arkansas, 580 F.3d 781, 785 (8th Cir. 2009).

Ms. Edwards asserts an FMLA retaliation claim. Absent direct evidence, an FMLA retaliation claim is evaluated under the burden shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Sisk v. Picture People, Inc., 669 F.3d 896, 899 (8th Cir. 2012).[1] The employee must first establish a prima facie case, which creates a presumption of unlawful retaliation. Id. To establish a prima facie case of retaliatory discrimination, Edwards must show: 1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and 3) the materially

---

[1] For the purposes of the burden shifting framework, the Plaintiff seems to concede there is no direct evidence of FMLA discrimination in the present case. Rather, the Plaintiff relies on circumstantial evidence to prove her FMLA claim.

6

adverse action was causally linked to the protected conduct. See id. at 900.  If Edwards establishes a prima facie case, the burden shifts to Van Diest to articulate a legitimate, nondiscriminatory reason for its actions.  See id. at 899. The employer's burden is one of mere production, not proof. Id.  If the employer meets this burden of production, the employee must then identify evidence sufficient to create a genuine issue of material fact whether the employer's proffered explanation is merely a pretext for unlawful retaliation.  Id.  "The employee bears the ultimate burden of proving that FMLA leave was the determinative factor in the negative employment action."  Bumgarner v. Grafco Indus., LP, 581 F. Supp. 2d 1052, 1060 (S.D. Iowa 2008).

At the outset, it is important to note that in this type of case, "[a]n employee can prove retaliation through circumstantial evidence..."  Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006).  It is undisputed that Ms. Edwards engaged in protected conduct and suffered a materially adverse employment action.  She took FMLA leave and was terminated.  The next question is whether the termination was connected to the taking of FMLA leave.  It is undisputed that

Ms. Edwards was terminated a month after using her FMLA leave. It is also undisputed that, at the very least, there was confusion regarding Ms. Edwards absence. Her direct supervisors were not notified that she was on FMLA leave. It is also undisputed that her supervisors were discussing adverse actions to take against Ms. Edwards, including taking away her supervisor status and lowering her pay. Accordingly, Ms. Edwards has proffered sufficient evidence for the burden to shift to the Defendant.

Once the burden shifts to the Defendant, the Defendant must produce a nondiscriminatory reason for the termination. The Defendant argues that Ms. Edwards used foul language and had an inappropriate confrontation with a group of her subordinates. This allegation is supported by appropriate documentation in the record. See Docket #14, Appendix, p. 49-59.

Since the Defendant has produced a non-discriminatory reason for the termination, the burden shifts back to Ms. Edwards, who must show that there is a genuine issue of material fact whether the employee's proffered explanation is merely a pretext for unlawful retaliation. Ms. Edwards

alleges that the employees who 'reported' that she used foul language did not make the report on their own. Docket #17, Appendix, p. 27. Rather, they were approached by managers who worked for the Defendant and encouraged to file reports. Id. Moreover, it seems undisputed that the Defendant did not always terminate employees after there first infraction. See Docket # 17, Appendix, p. 30, 51-52. Specifically, Ms. Edwards points out the case of Tony Izzo, a Van Diest employee, who received several warnings regarding inappropriate behavior before he was terminated. In spite of the fact that other employees got warnings for inappropriate behavior, Ms. Edwards was terminated for one instance of using profane language, even though she had a clean disciplinary record and her supervisors admit that she was normally professional in the workplace. Docket #17, Appendix, p. 23.

The Court is persuaded that Ms. Edwards has met her burden to show there is a genuine issue of material fact regarding whether her termination was pretextual. Ms. Edwards had no history of discipline at work. However, she had taken FMLA leave. It is clear that her supervisors did not understand what FMLA leave meant and considered sanctioning

9

her for being gone. See, as an example, Docket #17, Appendix, p. 22.[2] Then, shortly after she returned to work, one instance of using foul language occurred. Her fellow employees did not file written reports on their own. Rather, management became aware of the incident and encouraged employees to file written reports. Ms. Edwards was then terminated, in spite of the fact that she took responsibility for her misconduct. This occurred when other employees, such as Tony Izzo, who refused to take responsibility for their misconduct, were given multiple warnings for similar discretions.

It is for the jury, not the judge, to weigh that evidence and determine if the Defendant fired Ms. Edwards for using

---

[2]At the hearing, Defendant argued that the supervisor in question did not know Ms. Edwards was on FMLA leave because Ms. Edwards had not completed the paperwork. The Defendant argued that because the supervisor believed Ms. Edwards was otherwise absent, his inquiry was proper. The Defendant also argued that some of the inquiries into Ms. Edwards' status were the result of normal annual reviews. The Plaintiff disagreed. This is exactly the kind of evidentiary dispute that should be resolved by a jury. It is possible this was an innocent misunderstanding and the Defendant never intended Ms. Edwards lose attendance points, lose her white hat status, or have her pay grade affected for taking FMLA leave. It is also possible that this is evidence of the Defendant's intention to punish Ms. Edwards for taking leave. The jury must make that determination.

FMLA leave. The Court cannot rule as a matter of law that the circumstantial evidence, cited above, is insufficient for Ms. Edwards' claim to proceed. Accordingly, the Defendant's Motion for Summary Judgment regarding the FMLA claim must be denied.

### B. Age Discrimination

In her Complaint, Ms. Edwards claims that she was discharged because of her age, giving rise to cause of action under both the ADEA and the Iowa Civil Rights Act [hereinafter ICRA]. However, in her response to the Defendant's Motion for Summary Judgment, Ms. Edwards failed to address the age discrimination claim. The Defendant filed a response indicating that it is entitled to summary judgment because Ms. Edwards failed to resist their Motion for Summary Judgment. **During the hearing, Plaintiff's counsel conceded that Ms. Edwards was not resisting the Motion for Summary Judgment on the age discrimination claim. Accordingly that claim shall be dismissed.**

### VI. CONCLUSION

**<u>Defendant's Motion for Summary Judgment is denied in part and granted in part, consistent with this Order.</u>**

As discussed during the hearing, the Court's schedule requires that a new trial date[3] be established. **United States Magistrate Judge Leonard T. Strand shall conduct a trial scheduling conference with the parties to select a new trial date/deadlines**.

**IT IS SO ORDERED** this 14th day of November, 2012.

*Donald E. O'Brien*
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

---

[3]The jury trial is currently scheduled for December 10, 2012 (Docket No. 8).